# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LUIS SAEZ,
     *Plaintiff*,

    v.

THE STATE OF CONNECTICUT
JUDICIAL BRANCH, TAIS C. ERICSON,
and JAIME LETTIERI,
     *Defendants*.

No. 3:21-cv-915 (JAM)

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Plaintiff Luis Saez is Hispanic and works as a judicial marshal for the state courts in Connecticut. Part of his job involves driving a transport van to carry prisoners back and forth from state courthouses. Saez complains that he was disciplined for making brief "lunch run" stops with his transport van to pick up food for lunch. According to Saez, this discipline was imposed for racially discriminatory reasons because judicial marshals who are white and non-Hispanic are permitted to use their work transport vans for lunch runs.

Saez has named three defendants in this lawsuit: (1) the State of Connecticut Judicial Branch; (2) Jaime Lettieri, Chief Judicial Marshal of the New Haven Judicial District; and (3) Tais C. Ericson, Executive Director of Court Operations.[1]

As to the State of Connecticut Judicial Branch, Saez alleges claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. §§ 46a-60 *et seq.*, as well as a common law claim for negligent supervision of employees. As to Lettieri and Ericson, Saez alleges claims pursuant to

---

[1] The caption of the complaint refers to the defendant as "Jaime Lettieri," while the body of complaint refers to the defendant as "Jamie Lettieri." Doc. #2 at 4 (¶¶ 15-16).

42 U.S.C. § 1983 that they violated his constitutional right to equal protection and that they are also liable under state law for intentional infliction of emotional distress.

The defendants have moved to dismiss Saez's complaint. For the reasons below, I will grant the motion to dismiss except as to the § 1983 equal protection claim against Lettieri.

BACKGROUND

The facts set forth below are drawn from the amended complaint and are assumed to be true only for the purpose of this ruling.

 Saez is a Hispanic male.[2] For the past twenty years, he has worked for the Connecticut Judicial Branch as a judicial marshal.[3] In that role, he has received consistently positive performance evaluations as a highly competent and valuable employee.[4]

For the past five years, Saez has been assigned to the Centralized Transportation Unit of the Connecticut Judicial Marshal Services in New Haven, Connecticut.[5] His job is to transport state prisoners and other detainees to and from the courthouse.[6]

In May 2018, Lettieri reported to the Director of Judicial Marshal Services O'Donovan Murphy that Saez and a fellow marshal were making brief stops prior to picking up prisoners.[7] The purpose of these stops was for Saez and the other marshal, who is African American, to pick up food to consume at the courthouse.[8] At no time did Saez or his colleague make such a stop with a prisoner on board the transport vehicle.[9] Lettieri submitted a follow-up complaint in

---

[2] *Id*. at 3 (¶ 7).
[3] *Ibid*. (¶ 11).
[4] *Ibid*.
[5] *Ibid*. (¶ 12).
[6] *Ibid*. (¶ 13).
[7] *Id*. at 4 (¶ 15).
[8] *Ibid*. (¶ 18).
[9] *Ibid*.

writing to Director Murphy alleging that Saez had violated Judicial Branch policy by making these stops.[10]

Back in March 2015, Director Murphy had given permission for other marshals in the Windham Judicial District to make such stops "[t]o pick-up lunch and return to the Courthouse for consumption."[11] The "overwhelming majority" of marshals in that district are white and non-Hispanic.[12] Other judicial districts in Connecticut also permit marshals to stop and pick up food while driving transport vans.[13]

Yet following Lettieri's complaints, the Judicial Branch began tracking and documenting Saez's movements at work, which they did not do to any non-Hispanic marshals.[14] In July 2018, Saez received a written reprimand after complaining about unfair treatment and was then disciplined with a five-day unpaid suspension for making the stops to pick up food.[15] Ericson was responsible for imposing the suspension.[16] Saez subsequently received a negative employee performance appraisal in October 2018.[17]

Saez claims he was subject to adverse actions because of his Hispanic race, ethnicity, ancestry, and national origin.[18] The defendants have moved to dismiss the complaint.

## DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), a court must credit as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662,

---

[10] *Ibid*. (¶ 18).
[11] *Id*. at 5 (¶¶ 20-22).
[12] *Ibid*. (¶ 24).
[13] *Ibid.* (¶ 25).
[14] *Id*. at 5-6 (¶¶ 26-27).
[15] *Id*. at 4, 6 (¶¶ 14, 28-29, 31).
[16] *Id*. at 6 (¶ 30).
[17] *Ibid*. (¶ 32).
[18] *Ibid.* (¶ 33).

678 (2009). As the Supreme Court has explained, this "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ibid.* Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ibid.*

Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to establish a plausible claim for relief. *Ibid.* In this manner, the Supreme Court has instructed that a court's focus must be on whether the well-pleaded factual allegations—as distinct from conclusory statements—are enough to establish plausible grounds for relief. *Id.* at 679. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ibid.*; *see also Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) (discussing applicable principles for review of the adequacy of a complaint).

### *Claims against the Judicial Branch*

The Judicial Branch moves to dismiss on grounds of failure to exhaust the Title VII claims and on immunity grounds. Although Saez has filed a response to the motion to dismiss, his response does not address any of the arguments raised as grounds for dismissal of his claims against the Judicial Branch. Therefore, I conclude that Saez has either abandoned his claims against the Judicial Branch or, at the least, concedes that the complaint as presently alleged against the Judicial Branch does not state plausible grounds for relief. *See, e.g, Krohnengold v. New York Life Ins. Co.*, 2022 WL 3227812, at *5 (S.D.N.Y. 2022); *Farag v. XYZ Two Way Radio Serv., Inc.*, 2022 WL 3030346, at *7 (E.D.N.Y. 2022). Accordingly, I will grant without

prejudice the motion to dismiss the claims against the Judicial Branch.

### *Section 1983 equal protection claims against Lettieri and Ericson*

Lettieri and Ericson move to dismiss the § 1983 equal protection claims against them. "The Equal Protection Clause ... commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). But the Equal Protection Clause does not entitle a plaintiff to relief merely because he has been treated differently than someone else. Instead, "[t]o prevail on an equal protection claim, a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Reynolds v. Quiros*, 990 F.3d 286, 300 (2d Cir. 2021).

Here, Saez alleges that he was subject to discrimination in the form of a selective investigation and enforcement of a rule against him.[19] "To prevail on such a claim, a plaintiff must prove that (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019).

Saez's claim arises in the employment context. In *Vega v. Hempstead Union Free School District*, 801 F.3d 72 (2d Cir. 2015), the Second Circuit considered what a complaint must allege

---

[19] The amended complaint does not assert a class-based equal protection claim, nor has Saez articulated that theory in opposing the motion to dismiss. I therefore do not discuss in this ruling whether Saez has plausibly alleged facts supporting a class-based equal protection claim. Further, while the amended complaint makes a single reference to "due process," Doc. #2 at 11 (¶ 40), it does not specify the nature of that claim or describe any process Saez was entitled to which the defendants denied him. Such a conclusory allegation does not satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure, and in any event Saez has not opposed the defendants' motion to dismiss with respect to such a claim.

in order to support claims for employment discrimination that were asserted under both Title VII

and § 1983. *Id.* at 85–89. As to a Title VII claim, the Second Circuit ruled that "to defeat a

motion to dismiss or a motion for judgment on the pleadings in a Title VII discrimination case, a

plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his

race, color, religion, sex, or national origin was a motivating factor in the employment decision."

*Id.* at 87. As to a § 1983 equal protection claim, a plaintiff "must plausibly allege a claim under

the same standards applicable to a Title VII claim—and that the adverse action was taken by

someone acting 'under color of state law.'" *Id.* at 88.

Although the Second Circuit suggested in *Vega* that a § 1983 claim is subject to

essentially the same pleading standards as a Title VII claim, it has more recently explained how

"§ 1983 and Title VII differ in important ways." *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir.

2019). One key difference is the degree to which a defendant in these two types of actions may

be held liable for the acts of others. A Title VII action may proceed only against an employer,

and an employer is almost always a company or organization. The employer entity may be liable

under Title VII for the acts of *any* of its agents, provided that these acts are properly attributable

to the employer under agency and negligence principles. *See id.* at 220; *see also Menaker v.

Hofstra Univ.*, 935 F.3d 20, 37 (2d Cir. 2019).

By contrast, the defendant in a § 1983 action is ordinarily an individual rather than an

organization or the employer itself.[20] When a plaintiff sues an individual defendant under § 1983

for unconstitutional discrimination, he must show the culpable personal involvement of the

---

[20] One exception to this rule is that a § 1983 claim may lie against a municipality for constitutional violations that are caused by a municipal policy, practice, or custom. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978). As the Second Circuit has noted in the municipal employment discrimination context, this means that a § 1983 plaintiff must prove that an official municipal policy caused a discriminatory act, while a Title VII plaintiff need not make such a showing. *See Legg v. Ulster Cnty.*, 979 F.3d 101, 114 (2d Cir. 2020). Of course, the employer here—the State of Connecticut Judicial Branch—is not a municipality or an entity that is subject to liability at all under § 1983. *See Campbell v. City of Waterbury*, -- F. Supp. 3d. ---, 2022 WL 393985, at *4–5 (D. Conn. 2022).

individual defendant in the discrimination, and § 1983 does not impose vicarious liability on an individual defendant for the discriminatory acts of others. *See Naumovski*, 934 F.3d at 212.

Yet another newly recognized difference between a Title VII action and a § 1983 action for employment discrimination is the standard of causation. A Title VII plaintiff need only show that the employer's consideration of race or other protected factors was a motivating factor for the adverse employment action. But, as the Second Circuit has recently made clear, a § 1983 plaintiff must show more: that the adverse action would not have occurred but for the individual defendant's intent to discriminate. *See id.* at 213–14.

Turning now to the complaint, I consider whether it plausibly alleges § 1983 equal protection claims against Lettieri and Ericson. Of course, evidence of intentional discrimination may come in many forms. Sometimes the evidence is direct. For example, a defendant may make comments that reveal their consideration of a plaintiff's race. Or a defendant may enforce or apply a policy that is explicitly based on race or factors that can reasonably be viewed as a proxy for race. Other times the evidence of discrimination may be less direct. For example, a defendant may give preferential treatment to others who are similarly situated to the plaintiff but who are not the same race as the plaintiff. *See Vega*, 801 F.3d at 87 (noting how a plaintiff may meet her pleading burden by citing "direct evidence of intent to discriminate or by indirectly showing circumstances giving rise to an inference of discrimination"). All in all, a § 1983 equal protection complaint is sufficient if it alleges any combination of facts that, viewed in their totality and drawing all reasonable inferences in the plaintiff's favor, make it plausible rather than speculative that the defendant engaged in adverse action against the plaintiff because of his race.

I will start with whether the complaint alleges any direct evidence of discrimination. It does not. For example, it does not allege that any defendant made any type of statement

suggestive of any disfavor toward Saez on the basis of his Hispanic race.

Nor does the complaint allege that the terms of the policy it challenges are based on race-related criteria. The policy is a garden variety employment rule that bars an employee from using an employer's vehicle for personal purposes like going to a store or restaurant to buy lunch.

In this manner, the facts here differ from the facts in *Vega*, where the Second Circuit concluded that it was plausible that a Hispanic school teacher was the victim of discrimination when he was assigned a larger percentage of Spanish-speaking students than his similarly situated co-workers. *Id*. at 88. It was plausible there to conclude that a policy inflected with consideration of Spanish language skills was a proxy for discrimination against someone of Hispanic descent. That is not so here.

Next I turn to whether the complaint alleges indirect evidence of discrimination. Saez alleges that the policy was applied to him but not to non-Hispanic judicial marshals. More specifically, the complaint alleges that there is a written policy in the Windham Judicial District that has been approved by a senior official of the Judicial Branch to allow judicial marshals to use transport vans to pick up food for lunch and that the "overwhelming majority" of judicial marshals in the Windham Judicial District are "white and non-Hispanic."[21] The complaint further alleges that "upon information and belief, Judicial Districts around the State also permit the use of transport vans in the manner which the plaintiff used the transport van, and for which he was suspended without pay," and that "[n]o other white, non-Hispanic Judicial Marshal was subjected to this level of invasive scrutiny" that was imposed on Saez.[22]

Viewing the allegations of the complaint in the light most favorable to Saez, I understand Saez to allege that not only *outside* the New Haven judicial district but also *within* the New

---

[21] Doc. #2 at 5 (¶¶ 21-22, 24).
[22] *Id*. at 5-6 (¶¶ 25, 27).

Haven judicial district there is no policy that bars the use of transport vans for lunch runs and that non-Hispanic judicial marshals are allowed to use a transport van for lunch runs. Because the complaint otherwise alleges that Lettieri is in charge of the New Haven judicial district and took active steps to investigate and sanction Saez for using a transport van to make lunch runs, I conclude that the complaint alleges sufficient comparator evidence to render it plausible—if only barely—that Lettieri took adverse action against Saez because of his Hispanic race.

Other courts have ruled that a complaint which alleges with reasonable specificity a work supervisor's differential enforcement action against a plaintiff of one racial group but not against similarly situated employees of another racial group is enough to state a plausible § 1983 equal protection claim. *See Hu*, 927 F.3d at 97–98; *Sutter v. Dibello*, 2021 WL 930459, at *23 (E.D.N.Y. 2021); *Mr. Quinn v. Gould*, 2020 WL 1234553, at *6–7 (D. Conn. 2020). Accordingly, I conclude that Saez has plausibly alleged a § 1983 equal protection claim against Lettieri.[23]

I cannot reach the same conclusion as to Ericson. The complaint's sole allegation of misconduct by Ericson is that "[p]unishment was imposed upon the plaintiff by the Executive Director, Court Operations of the defendants, Tais C. Ericson."[24] The complaint lacks any reasonably specific allegations that Ericson had any dealings with Saez, was aware that Saez is

---

[23] Lettieri argues that Saez's equal protection claim is foreclosed by the Supreme Court's decision in *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591 (2008). But *Engquist* expressly does not bar claims of race-based discrimination. That decision held only that for purposes of an equal protection "class of one" claim when the government acts as an at-will employer rather than as sovereign, the law does not require that "like individuals … be treated alike," because an employer generally has discretion to make subjective decisions "in a seemingly arbitrary or irrational manner." *Id.* at 601–06. The *Engquist* decision explains that the Equal Protection Clause does not forbid a traffic officer from selecting one of a number of violators to punish; but "[o]f course, an allegation that speeding tickets are given out *on the basis of race or sex* would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns." *Id.* at 603–04 (emphasis added); *see also SECSYS, LLC v. Vigil*, 666 F.3d 678, 690 (10th Cir. 2012) (Gorsuch, J.) (key distinction is that "an officer who selects speeders at random because he cannot pull over everybody doesn't possess an *intent* to single out any particular person *because of* who he or she is").

[24] Doc. #2 at 6 (¶ 30).

Hispanic, or was aware of any differential treatment of Hispanic judicial marshals. In short, the complaint is devoid of allegations to suggest that Ericson acted with discriminatory intent.

The complaint further alleges that Ericson was non-Hispanic.[25] But the mere fact that a manager or supervisor is of a different race than the plaintiff does not plausibly suggest that the manager or supervisor acted for racially discriminatory reasons. *See Langston v. UFCW Loc. 919*, 2019 WL 6839336, at *3 (D. Conn. 2019) (collecting cases); *see also Milledge v. City of Hartford*, 2020 WL 3510813, at *3 (D. Conn. 2020) (same). Accordingly, I will dismiss Saez's § 1983 equal protection claim against Ericson.

### *Qualified immunity for Lettieri*

Lettieri further argues that she is entitled to qualified immunity. The doctrine of qualified immunity protects a government officer from liability for money damages stemming from a violation of the Constitution if the officer engaged in conduct that an objectively reasonable officer would not necessarily have known at the time amounted to a violation of the plaintiff's constitutional rights. *See Horn v. Stephenson*, 11 F.4th 163, 168–69 (2d Cir. 2021). In order for a plaintiff to overcome a defense of qualified immunity, a plaintiff must show that the defendant violated a right of the plaintiff that was clearly established law at the time of the conduct in question. *See ibid.*

Because it is sometimes difficult for an officer to understand how legal doctrine may apply to particular facts, a court must identify the right at issue with an appropriate level of specificity that is particularized to the facts of the case. *See id.* at 169. This is not to say that there must be a prior case involving identical facts or that is directly on point, so long as existing precedent makes clear beyond reasonable debate that what the officer was doing was a violation

---

[25] *Ibid.*

of the plaintiff's then-recognized constitutional rights. *See ibid.*

The defense of qualified immunity can be difficult to establish at the initial pleading stage, because the defendant must "show not only that the facts supporting the defense appear on the face of the complaint, but also that it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id*. at 170. Further, "the plaintiff is entitled to all reasonable inferences from the facts alleged, including those that defeat the immunity defense." *Ibid*.

Lettieri has not shown that she is entitled to qualified immunity at this stage. Construing the allegations of the complaint in Saez's favor, Lettieri intentionally singled out Saez for workplace discipline because of his Hispanic race. Such intentional race-based discrimination in the employment context violates equal protection rights that were clearly established at the time of Lettieri's alleged misconduct in July 2018. *See United States v. City of New York*, 717 F.3d 72, 92 (2d Cir. 2013) (noting the "obvious proposition" that "a public official … would violate Section 1981 or the Equal Protection Clause by intentionally taking adverse employment action on the basis of race" and that this "has been clear at least since 1976"); *see also Griffin v. New York*, 122 F. App'x 533, 535 (2d Cir. 2004) (dismissing qualified immunity appeal because employee's right to be free from racially discriminatory imposition of a probationary period was clearly established in 2004). Accordingly, I decline to dismiss the § 1983 claim against Lettieri on grounds of qualified immunity.

### *Intentional infliction of emotional distress claims against Lettieri and Ericson*

Saez has also sued Ericson and Lettieri under state law for intentionally causing him emotional distress. Under Connecticut law, a plaintiff seeking damages for intentional infliction of emotional distress must establish "(1) that the actor intended to inflict emotional distress or

that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Perez-Dickson v. City of Bridgeport*, 304 Conn. 483, 526–27 (2012). The Connecticut Supreme Court has explained that "extreme and outrageous" conduct describes a narrow set of behavior which "exceeds all bounds usually tolerated by decent society" and is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. at 527 (quoting *Appleton v. Bd. of Educ. of Town of Stonington,* 254 Conn. 205, 210–11 (2000)).

In "the employment context, it is the employer's conduct, not the motive behind the conduct, that must be extreme or outrageous," such that an "adverse yet routine employment action, even if improperly motivated, does not constitute extreme and outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner." *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 195 (D. Conn. 2000). Even conduct that is clearly wrong and illegal, such as paying an employee less based on race or gender, does not give rise to liability for infliction of emotional distress unless the defendant acts in an especially humiliating, extreme, or outrageous manner. *See ibid.; see also Larsen v. Berlin Bd. of Educ.,* 2022 WL 596677, at *10 (D. Conn. 2022) (same).

Saez alleges that he was subject to surveillance (including "following, photographing and detailing his every movement") to document that he was using a work transport van to engage in lunch runs and that he was eventually suspended for five days without pay.[26] These allegations of routine actions by an employer to verify a workplace violation and to impose discipline fall

---

[26] *Id*. at 5-6 (¶¶ 26, 29).

well short of the especially egregious conduct that is required to sustain a claim for intentional infliction of emotional distress in the workplace context. Accordingly, I will dismiss Saez's claims for intentional infliction of emotional distress against Lettieri and Ericson.

### CONCLUSION

For the reasons stated above, the Court GRANTS the motion to dismiss (Doc. #19) without prejudice on all claims other than Saez's equal protection claim against defendant Chief Judicial Marshal Lettieri. If Saez has grounds to allege claims that overcome the concerns stated in this ruling, then he may file an amended complaint within 30 days.

It is so ordered.

Dated at New Haven this 16th day of August 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge